**In re Andrew Paul HENDERSON and Verlean Henderson, Debtors.**

**Andrew Paul HENDERSON and Verlean Henderson, Plaintiffs,**

v.

**MADISON BANK & TRUST and Northwest National Bank of Chicago, Defendants.**

Bankruptcy No. 88 B 18621.
Adv. No. 89 A 0279.

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 19, 1989.

Robert H. Dachis, Keefe & Smith, Chicago, Ill., for debtors, Andrew Paul and Verlean Henderson.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by plaintiffs, Andrew Paul Henderson and Verlean Henderson (the "Hendersons"). For the reasons set forth herein, the Court having considered all the pleadings, exhibits and memoranda filed, does hereby deny the motion for summary judgment.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. The motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K) and (O).

## II. STANDARD FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); see also Donald v. Polk County, 836 F.2d 376, 378–379 (7th Cir. 1988).

In 1986, the Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." Farries v. Stanadyne/Chicago Div., 832 F.2d 374, 378 (7th Cir.1987) (quoting Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n of Indianapolis, 806 F.2d 146, 149 (7th Cir.1986)). The burden is on the moving party to show that no genuine issue of material fact is in dispute. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514; Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; Matsushita, 475 U.S. at 585–586, 106 S.Ct. at 1355–1356. There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact

to find for the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250, 106 S.Ct. at 2510–2511; *see also Valley Liquors, Inc. v. Reinfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, rather its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir.1988); *Marine Bank, National Association v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *In re Calisoff*, 92 B.R. 346, 350–351 (Bankr.N.D. Ill.1988). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

Rule 12(*l*) of the General Rules of the United States District Court for the Northern District of Illinois adopted by the General Order of the Bankruptcy Court on May 6, 1986, requires that the party moving for summary judgment file a detailed statement of material facts as to which they contend there is no genuine issue. Rule 12(m) in turn requires that the party opposing the motion file a statement of material facts as to which there is a genuine issue. If the Rule 12(m) statement fails to deny the facts set forth in the movant's statement, those facts will be deemed admitted.

## III.  UNDISPUTED FACTS AND BACKGROUND

Due to the fact that neither defendant filed a Rule 12(m) statement contesting the asserted uncontested facts set forth in the Rule 12(*l*) statement, those facts are deemed admitted for purposes of this motion. On December 2, 1988, the Hendersons filed a voluntary Chapter 7 petition. They listed certain real property on the Schedule B1, consisting of residential property at 3652 West Grand Avenue, Chicago, Illinois. They valued same at approximately $50,000.00. On the Schedule B4, they claim exemptions in the total amount of $15,000.00 in accordance with the aggregate homestead exemptions available to both individual debtors under Illinois law. *See* Ill.Rev.Stat. ch. 110, ¶ 12–901 (1988).

On March 17, 1989 the instant adversary proceeding was filed against Madison Bank & Trust ("Madison") and Northwest National Bank of Chicago ("Northwest") to avoid two junior trust deeds pursuant to 11 U.S.C. § 506. The complaint alleges that the property was purchased in 1985 for $50,000.00. Talman Home Federal Savings & Loan, not joined as a party, allegedly holds a first mortgage encumbering the property in the principal amount of $47,-500.00. Subsequently, the Hendersons remodeled and modernized the premises and procured loans from Madison and Northwest secured by trust deeds in the respective amounts of $10,611.00 and $14,757.00. They contend that after the improvements, the value of the realty did not exceed $60,-000.00. The Hendersons assert that if the property were sold as of the date of the filing of the petition for its fair market value, after paying the first mortgage loan balance and the cost of liquidation and satisfaction of their claimed homestead exemptions, there would no equity for the benefit of the estate or for payment of the outstanding junior liens of Madison and Northwest. Accordingly, they contend that pursuant to section 506 the junior liens

of Madison and Northwest should be avoided and those claims classified as unsecured.

On March 24, 1989, the registered agents of Madison and Northwest were served with a summons and complaint. However, neither defendant has pleaded. On July 26, 1989, the instant motion was filed and accompanied by an appraisal of the property. Said appraisal was performed by Lawrence Levine who valued the property at $51,720.00 as of May 30, 1989. In addition, the Hendersons filed an affidavit asserting joint ownership of the premises, their claim of homestead in same and their personal opinion that the fair market value of the property does not exceed $60,000.00. Furthermore, included with the moving papers were recorded copies of the trust deeds executed by the Hendersons in October, 1986 and January, 1987, respectively in favor of Northwest and Madison. The memorandum in support of the motion contains a copy of a letter dated July 19, 1989, from an attorney purportedly representing Madison advising that she did not intend to appear to contest the matter.

## IV. DISCUSSION

### A. 11 U.S.C. § 506

The Hendersons seek to utilize section 506 to strip down the subject junior liens. Section 506(a) provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditors' interest in the estate's interest in such property...." 11 U.S.C. § 506(a). Section 506(d) provides (with immaterial exceptions) that a lien which is not an allowed secured claim is void. The effect of these provisions is to strip down a lien encumbering the collateral to the value of the security. Such relief is increasingly requested by alert counsel. Section 506 strip downs are part of the strategic arsenal potentially available under the Bankruptcy Code.

Another main purpose served by section 506 is to put the secured creditor who chooses to pursue his rights in bankruptcy in the same position that he would occupy if he had decided to bypass bankruptcy. *In re Lindsey*, 823 F.2d 189, 191 (7th Cir. 1987). Absent the action taken by the Hendersons in the instant adversary proceeding, the junior trust deeds and liens created thereby encumbering the property in favor of Madison and Northwest would pass through bankruptcy unaffected but for the Hendersons' discharge from personal liability for the unpaid debts secured by the trust deeds. *See In re Tarnow*, 749 F.2d 464, 466 (7th Cir.1984). Under the undenied and verified allegations contained in the complaint, the property is subject to a senior mortgage lien in favor of Talman in an amount less than the alleged current fair market value. If that balance is added to the aggregate claimed homestead exemptions of $15,000.00, however, there is no value left in the collateral to which the allegedly subordinate junior liens of Northwest and Madison can attach. Hence, the Hendersons conclude those liens should be declared void under section 506(d).

The use of section 506 to avoid liens on real estate to the extent that the amount of the lien exceeds the value of the collateral has been cited with approval in several other cases decided in this District. *See In re Lyons*, 46 B.R. 604 (Bankr.N.D.Ill.1985); *In re Roth*, 38 B.R. 531, 540 (Bankr.N.D. Ill.) *aff'd*, 43 B.R. 484 (N.D.Ill.1984). Use of the section 506 stripping technique has recently been held to be properly invoked by Chapter 7 debtors. *In re Zlogar*, 101 B.R. 1 (Bankr.N.D.Ill.1989). As Judge Coar noted in *Zlogar*, section 506 only determines the status of the secured claim and does not determine the rights of the debtor and its creditors with respect to any subsequent disposition of the property. Application of section 506 is but the first step in what is a two-step process. The second step, not presently before the Court, is whether the debtor can retain ownership of the property after the liens have been stripped down. Summary judgment was appropriate in *Zlogar* because there was no issue of material fact as to the applicability of section 506(d) involving liens on real property in a Chapter 7 case where the property had been abandoned by the trustee and the debtors sought to re-

tain ownership. Thus, the law is clear that the relief sought is potentially available. The judges of this Court usually follow law pronounced by other judges of this Court unless there appears a substantial reason not to adhere to the principle of stare decisis. The Court perceives no such reason in this case.

### B. The Debtors' Waiver of Homestead

The flaw in the Hendersons' argument relates to the undisputed fact of their express release and waiver of their homestead rights as clearly indicated from the face of both the trust deeds. They have asserted their statutory homestead exemption rights to which no objections have been filed. Both trust deeds appear to be stock-form instruments and have been executed by the Hendersons. The trust deeds state that the Hendersons are "hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of the State of Illinois." Such exhibits along with the memorandum in support of the motion clearly indicate that they have made the requisite written waiver and release required by Ill.Rev.Stat. ch. 110, ¶ 12–904 (1988).

Section 12–904 provides in pertinent part that "[n]o release, waiver or conveyance of the estate so exempted shall be valid, unless the same is in writing, signed by the individual and his or her spouse...." The trust deed language, common to both, clearly releases and waives the Hendersons' homestead rights in favor of Northwest and Madison alone. Similar language was held to give rise to a presumption that homestead was knowingly waived and that it was for the debtors to rebut such presumption in order to assert a homestead exemption claim to proceeds from the sale of real estate. *See In re Harrigan*, 74 B.R. 224, 232 (N.D.Ill.1987). Hence, the Hendersons are not entitled to the relief sought as a matter of law.

A party who signs a document is presumed to have read it and understand its contents. *Harrigan*, 74 B.R. at 232, *citing* 12 Illinois Law and Practice, *Contracts* ¶ 151; *see also Finley v. Felter*, 403

Ill. 372, 86 N.E.2d 188 (1949). In cases where the express release, waiver or conveyance of homestead rights is taken by way of mortgage or security, it is presumed as a matter of law that the waiver was knowing and intelligent. The burden to rebut such presumption is on the debtor. The secured claimant is not burdened with proving that the debtor read and understood the homestead waiver clause.

Waivers of homestead rights should be viewed narrowly. *In re Hockinson*, 60 B.R. 250, 253 (Bankr.N.D.Ill.1986). Homestead can be effectively extinguished by conveyance from the owner thereof. 20 Illinois Law and Practice, *Homesteads* ¶ 75–76. The debtor who conveys legal and equitable title in his residence to a trustee expressly releasing and waiving homestead is not entitled to a homestead exemption in the proceeds of the sale made by the trustee at the debtor's direction. *In re Sjostrom*, 338 F.2d 676 (7th Cir.1964). *Sjostrom* was decided before the adoption of the Bankruptcy Code containing the provisions of section 506(a) and (d). Moreover, the statute then in effect providing for waiver of the homestead is not identical to the current statute but is substantially similar. Thus, *Sjostrom* is still controlling and applicable.

None of the cited cases involved the issue of whether section 506 stripping should be allowed to void an otherwise perfected lien on a debtor's homestead where the debtor has expressly waived the homestead exemption in the conveyance creating the perfected lien. To allow summary judgment would effectively eviscerate section 12–904 and render that Illinois statute nugatory in bankruptcy cases.

### V. CONCLUSION

For the foregoing reasons, the Court hereby denies the motion for summary judgment. This adversary proceeding is set for trial on January 10, 1990 at 2:00 p.m. for prove up of the value of the property, the amount and validity of the liens securing the claims encumbering same and for other relief under section 506. A Final

Pretrial Order will be entered concurrently herewith.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.